**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RUBEN ZARATE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09 C 7613 |
| ) | |
| JAMES LASKA, et al., ) | Judge Sharon Johnson Coleman |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Ruben Zarate filed a Second Amended Complaint alleging violation of his *Fourth Amendment* constitutional rights pursuant to 42 U.S.C. § 1983 based on the defendant police officers' use of excessive force. Zarate voluntarily dismissed defendants Cloherty, Motzny, Masters, Kosmyna and Mieczcak. The remaining defendant officers James Laska, Brian Storrie, Matthew Graf, and Mark Higgs move for summary judgment asserting they are entitled to judgment as a matter of law because Laska's decision to fire his weapon was reasonable under the circumstances, Zarate cannot establish the requisite personal involvement of Higgs, Storrie, and Graf for the post-shooting use of force, and Laska is entitled to qualified immunity. For the reasons set forth below, the Court denies defendants' summary judgment motion.

**Background**

The basic facts are not in dispute. However, the parties diverge on the details of the events. On March 28, 2008, at approximately 8:30 a.m. Zarate went to the Velasquez and Sons Muffler Shop intending to rob the store at gunpoint. During that attempt, Zarate encountered Jose Sida, the shop's manager. Sida told Zarate that he should come back when the owner would be at the shop that Thursday. Zarate gave Sida two telephone numbers for Sida to call him when

the owner was at the shop. Sida asked Zarate for a portion of the money he would get from the owner. Sida called the police approximately twenty-five minutes after Zarate left.

Later that morning, four police officers (Laska, Higgs, Storrie, and Graf) in plain clothes arrived at the muffler shop in response to Sida's call. The officers devised a plan to lure Zarate to the shop in order to apprehend him. Higgs and Storrie positioned themselves in the muffler shop's garage work area, while Laska was in the shop's office and Graf was outside the main entrance in a parked car. At the direction of the police officers, Sida telephoned Zarate. Zarate and Sida exchanged several phone calls.

Although Zarate admits that he had a gun with him when he returned to the muffler shop, he testified that it was in the waistband of his pants and he never pulled it out. Zarate testified at his deposition that he never pulled the gun out, that it was not functional, and he did not threaten anyone with it. Zarate explained in his deposition that a friend of his dropped him off near the muffler shop and he peered through a wooden fence before approaching. When Zarate reached the shop, he testified that he opened the door slightly, heard someone say "Oh shit!" and start shooting. Zarate turned and ran. He testified that his gun fell out of his pants when he ran. Zarate was struck by a bullet in the back and fell to the ground in the parking lot in front of the shop. He suffered extensive internal injuries as a result of the shooting. He testified that he did not see anyone in the office, and did not hear anyone announce themselves as police officers. Shop employee, Antonio Diaz, testified that he did not hear anyone announce police.

Zarate testified that he did not know that it was the police who shot him until later. Four shots were fired by Laska. Three of the bullets were recovered inside the shop. Zarate testified that he was "rushed" by three police officers, while he lay on the ground. He said they pushed

2

their knees and elbows into his back and neck even though he had been shot was crying out in pain. He was handcuffed and flipped over onto his back.

The bullet struck Zarate in his low left back and tracked internally from his low back up and to the right. The bullet had to be surgically removed. Dr. Jennifer Glover, Zarate's treating surgeon, testified that Zarate sustained severe internal injuries including damage to his small bowel, stomach, mesentery, pylorus, and liver. He also suffered some fractures to his vertebrae. The injuries were life-threatening and he would have died without surgery.

**Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court must construe all reasonable inferences in the light most favorable to the non-moving party. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). All disputed issues of fact are to be resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**Discussion**

Defendants move for summary judgment claiming that there is no genuine issue of material fact that Officer Laska's use of force in firing his weapon and shooting Zarate was objectively reasonable under the circumstances. Claims of excessive force by a law enforcement officer are analyzed under the *Fourth Amendment*'s reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

3

actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The reasonableness inquiry of an officer's use of force is an objective one viewed in light of the facts and circumstances confronting the officer, without regard to any underlying intent or motivation. *Id.* at 397. Thus, the Court must examine the reasonableness of the use of force from the perspective of a reasonable officer on the scene, without the benefit of 20/20 hindsight. *Id.* at 396.

Defendants argue that this Court should ignore the testimony of Ruben Zarate because he could not remember all of the details of the incident and thus his testimony is speculative. This Court disagrees and declines to discount Zarate's testimony. Zarate unequivocally testified that he opened the door slightly, heard someone exclaim "Oh shit!" and start shooting at which point he turned and ran. This Court does not believe that this testimony is speculative simply because he could not recall if any part of his body entered the shop or how many seconds the incident took or how many shots were fired.

This Court believes this is a close case, and as such, there are some factual issues for jury determination. In fact, this Court believes the reasonableness of Officer Laska's actions is called into question due to circumstances created by the defendant officers. By positioning themselves as they did, as if on a television program, they courted this debacle. This Court understands that it is unusual for the perpetrator of an attempted armed robbery to leave his telephone number so he can be called at a more profitable time. The absurdity of this fact suggests that the officers need not have used such elaborate tactics to apprehend Zarate.

There are several factual issues related to the manner in which the incident played out. Officer Laska testified that he announced that he was police before he started shooting. Officer Higgs testified that he heard Laska yell something before he heard gunfire. Officer Storrie testified that he thought Laska said "police or something" prior to the gunshots. The shop

4

employee Antonio Diaz testified that he did not hear anyone announce "police." Thus, there is an issue of fact as to whether Laska announced his office. Laska also admits to having been surprised by Zarate.

There is also a question of fact as to whether Zarate had his weapon drawn and whether he entered the shop. Laska testified that Zarate took several steps into the shop and was brandishing his weapon. Zarate could not recall if any part of his body entered the shop, but he clearly testified that he had only opened the door slightly before the gunfire started and he never removed his gun from his waistband. The defendants also contend that all the shots were fired inside and that Zarate was shot inside. However, a shell casing was found outside the shop. Zarate testified that he fell to the ground in the parking lot when he was shot because he could not move his legs.

Defendants argue that even if Zarate was shot while fleeing, it was still reasonable under the fleeing felon rule. The fleeing felon rule provides that if an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others, it is not constitutionally unreasonable to prevent the suspect's escape by the use of deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). While a jury could believe Laska's testimony that Zarate was brandishing his gun at Laska before Laska fired, a jury could also believe that Laska started firing because Zarate startled him and that Zarate never drew his weapon. A jury might also believe that Zarate fled, not from police and arrest, but from gunfire. He testified that he did not see anyone before hearing gunshots, no one announced the presence of police, and it was only after the incident that he learned he was shot by a police officer. "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence." *Abdullahi v. City of Madison*, 423 F.3d

5

763, 773 (7th Cir. 2005). Accordingly, this Court concludes there are significant factual disputes as to the reasonableness of Laska's use of force that depends on weighing the credibility of testimony.

Next, defendants argue that Higgs, Storrie and Graf lack the requisite personal culpability to be held liable for the handcuffing of Zarate. Zarate also claims that Higgs, Storrie and Graf used excessive force while he was lying on the ground in the parking lot after being shot. Zarate contends that three officers "rushed" him, pressing their knees and elbows into his neck and back where he was shot and then flipped him over onto his back. Storrie and Graf admit to handcuffing Zarate, but assert that they treated him well. There is testimony from other witnesses that they did not see any mistreatment of Zarate. Indeed, Zarate himself admitted in his testimony that his memory of the events following his shooting is blurry. Nevertheless, this Court finds that an assessment of what precisely happened relies too heavily on the credibility of the witnesses for this Court to conclude as a matter of law that the officers' use of force was reasonable. The fact that Zarate could not assign particular blame to the individual officers is not unique in section 1983 cases and in this Court's experience the plaintiff is rarely aware of which officer did what until trial. Officers Storrie and Graf admit to handling and arresting Zarate after the shooting, which is sufficient to meet the personal involvement requirement. Likewise, Higgs was on the scene and there is question as to his ability to intervene.

This Court also finds factual issues undermine defendants' contention that they are entitled to judgment as a matter of law with respect to Zarate's claim that they failed to intervene to prevent either the shooting or the manner in which he was handcuffed and taken into custody. A law enforcement officer that is present and fails to intervene to prevent another officer from infringing on an individual's constitutional rights is liable under section 1983. *Yang v. Hardin,*

6

37 F.3d 282, 285 (7th Cir. 1994). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Village of East Hazel Crest, Ill.,* 110 F.3d 467, 478 (7th Cir. 1997). Although there is scant direct evidence to suggest that Storrie, Higgs, and Graf had a reasonable opportunity to intervene in the shooting, it is undisputed that they were only a few feet away. Moreover, the three officers were present at the handcuffing of Zarate. Under these circumstances, this Court concludes that questions of fact remain on Zarate's intervention claim.

Lastly, Officer Laska asserts that he is entitled to qualified immunity. Qualified immunity protects government officials from individual liability for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000). Officer Laska argues that he is entitled to qualified immunity because the mistake in a split-second decision of life or death was reasonable. He cites the Illinois Fleeing Felon statute, 720 ILCS 5/7-5, which provides that:

> "a peace officer is justified in using force likely to cause death or great bodily harm only when reasonably believes that such force is necessary to prevent death or great bodily harm to himself or such other person, or when he reasonably believes both that: (1) Such force is necessary to prevent the arrest from being defeated by resistance or escape; and (2) The person to be arrested has committed or attempted a forcible felony which involves the infliction or threatened infliction of great bodily harm or is attempting to escape by use of a deadly weapon, or otherwise indicates that he will endanger human life or inflict great bodily harm unless arrested without delay."

Although it is a close case, the factual issues referenced above as to whether it was reasonable for Laska to believe that force was necessary under the circumstances. Thus, this Court is compelled to deny summary judgment on this issue as well.

Based on the foregoing, defendants' Motion for Summary Judgment is denied.

IT IS SO ORDERED.

Date: May 1, 2012

Entered:_____
Sharon Johnson Coleman